IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTIAN LEGAL SOCIETY CHAPTER AT SOUTHERN ILLINOIS UNIVERSITY SCHOOL OF LAW, a Student Organization at the Southern Illinois University School of Law on Behalf of Itself and Its Individual Members, <br><br> Plaintiff, <br><br> vs. <br><br> JAMES E. WALKER, in His Official Capacity as President of Southern Illinois University; PETER C. ALEXANDER, in His Official Capacity as Dean of Southern Illinois University School of Law; JESSICA J. DAVIS, in Her Official Capacity as Director of Law Student Development; WALTER V. WENDLER, in His Official Capacity as Chancellor of Southern Illinois University-Carbondale; JOHN M. DUNN, in His Official Capacity as Provost and Vice Chancellor of Southern Illinois University-Carbondale, <br><br> Defendants. | CIVIL NO. 05-4070-GPM |

## **MEMORANDUM AND ORDER**

**MURPHY, Chief District Judge:**

This matter is before the Court on Plaintiff's motion for a preliminary injunction. The parties agree that the record is sufficient for resolution of the preliminary injunction issue but that additional discovery is needed for final disposition of the case. A motion to dismiss Counts III through VI of the complaint is pending. Apparently, Defendants intend to answer Plaintiff's First Amendment

freedom of expressive association and free speech claims (*see* Doc. 35, moving to extend time to respond to Counts I and II until after disposition of motion to dismiss).

The facts are undisputed. Plaintiff is an unincorporated student organization of Southern Illinois University (SIU) School of Law and is a local chapter of the national organization known as the Christian Legal Society (CLS) (Doc. 1, ¶ 2.1). SIU School of Law is a public law school and is a division of SIU (*id.* at ¶ 3.11). Until March of this year, Plaintiff enjoyed the status of a registered student organization of SIU School of Law (*see id.* at ¶ 3.12 and Ex. D). This status conveyed certain benefits and privileges, including access to space on law school bulletin boards, private meeting space within the law school, storage space within the law school, law school website and publication access, email access on the law school's List-Serve, eligibility for certain funding through the law school, and use of the SIU name (*see id.* at ¶ 3.13 and Ex. E).

Plaintiff requires that its members and officers agree to and affirm the following Statement of Faith:

> Trusting in Jesus Christ as my Savior, I believe in:
>
> - One God, eternally existent in three persons, Father, Son and Holy Spirit.
> - God the Father Almighty, Maker of heaven and earth.
> - The Deity of our Lord, Jesus Christ, God's only Son conceived of the Holy Spirit, born of the virgin Mary; His vicarious death for our sins through which we receive eternal life; His bodily resurrection and personal return.
> - The presence and power of the Holy Spirit in the work of regeneration.
> - The Bible as the inspired Word of God.

(*Id.* at ¶ 3.6, *citing* Ex. B)

> CLS interprets its Statement of Faith to require that officers and members adhere to orthodox Christian beliefs, including the Bible's prohibition of sexual conduct between persons of the same sex. <u>A person who engages in homosexual conduct or adheres to the viewpoint that homosexual conduct is not sinful would not be permitted to serve as a CLS chapter officer or member.</u> A person who may have engaged in homosexual conduct in the past but has repented of that conduct, or who

>has homosexual inclinations but does not engage in or affirm homosexual conduct, would not be prevented from serving as an officer or member.

(*Id*. at Ex. G) (emphasis added)

On March 25, 2005, Defendant Alexander advised Plaintiff's President, via letter, that the foregoing interpretation, which Plaintiff had adopted as its policy, violated the following SIU policies:

>It is the policy of Southern Illinois University at Carbondale to provide equal employment and education opportunities for all qualified persons without regard to race, color, religion, sex, national origin, age, disability, status as a disabled veteran or a veteran of the Vietnam era, <u>sexual orientation</u>, or marital status. [referred to hereinafter as the "Affirmative Action Policy"]

and

>No student constituency body or recognized student organization shall be authorized unless it adheres to all appropriate federal or state laws concerning nondiscrimination and equal opportunity …. [referred to hereinafter as the "Board of Trustees Policy"]

(*Id*. at Ex. H) (emphasis added) Consequently, Plaintiff's status as a recognized student organization was revoked (*id*.).

Plaintiff seeks preliminary injunctive relief to restore its rights as they were on March 24, 2005. While Plaintiff frames the relief it seeks in terms of restoring the status quo, Defendants frame it much differently. Defendants interpret Plaintiff's request as asking the Court to negate SIU's facially neutral Affirmative Action Policy by preventing SIU from enforcing it.

In order to obtain a preliminary injunction, Plaintiff must show that (1) it is reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm Defendants will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004). If Plaintiff meets this threshold

burden, then the inquiry becomes a "sliding scale" analysis where these factors are weighed against one another. *Id*. "When a party seeks a preliminary injunction of the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor." *Id*. Often is not always, however, as illustrated by this case.[1] Here, the Court's inquiry must balance the likelihood of success on the merits and the irreparable harm that will result to Plaintiff if the preliminary injunction does not issue.

SIU's Affirmative Action Policy is facially neutral. The law is clear that where a university promulgates a valid rule, it may deny, withdraw, or suspend the benefits of participation in the internal life of the college community to any group that reserves the right to violate any valid campus rules with which it disagrees. *Healy v. James*, 408 U.S. 169, 193-94, 194 n.24 (1972).[2] Although the States and school officials have comprehensive authority to prescribe and control conduct in state-operated educational institutions, courts must be vigilant to protect First Amendment freedoms because the "college classroom with its surrounding environs is peculiarly the 'marketplace of ideas.'" *Id*. at 180.

Under the Affirmative Action Policy, and as a consequence of revocation of recognized student organization status, Plaintiff is not forced to accept anyone as a member. This case does not involve the denial of admission to a club or even the denial of the right to engage in a particular

---

[1]The Court is mindful of the admonition that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004), *quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976).

[2]Based upon the parties' representations at the beginning of the hearing, at this stage in the case, the Court need not, and indeed cannot, decide whether the Affirmative Action Policy has been neutrally applied.

activity, per se, and this is what takes it outside of the ambit of the heightened First Amendment protections mentioned above. Plaintiff submitted two affidavits from the current and past Presidents of Plaintiff stating that they are "aware of no individual who has ever submitted an application for formal 'membership' or sought a leadership position in CLS at SIU and been denied on the basis of the individual's refusal or inability to affirm the CLS Statement of Faith or to endeavor to live their life consistent with the CLS Statement of Faith" (Docs. 21, 32). All that is involved is access to the bulletin boards, private meeting space, storage space, website and publication access, email access, funding eligibility, and use of the SIU name. The question is not whether the forced inclusion of an individual would significantly affect Plaintiff's ability to express public or private viewpoints. That was the issue involved in *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), which Plaintiff cites in its papers. The revocation of recognized student organization status has not in any way forced Plaintiff to alter its message or expression as in *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995). Here, Plaintiff's right to meet, assemble, evangelize, and proselytize are not impaired. Instead, Plaintiff seeks SIU's endorsement as a recognized student organization, with all the accoutrements thereof, and claims that it has and will continue to suffer irreparable harm if it is not restored to recognized student organization status "during the critical recruitment period at the beginning of the fall semester" (Doc. 20, ¶ 3).

It is not clear that Plaintiff ultimately will prevail on the merits – at best it is a close question. There is no showing of irreparable harm: the organization exists, will continue to exist, and will meet and carry-on its business. SIU's withholding of recognized student organization status only means that Plaintiff will have to use other meeting areas and other ways to communicate with members and potential members. In this day and age, it hardly can be said, as claimed during the

hearing, that no alternative channels of communication exist. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 53 (1983). It is speculative that the withholding of recognized student organization benefits would harm, much less irreparably harm, Plaintiff.

For the foregoing reasons, Plaintiff's motion for a preliminary injunction (Doc. 20) is **DENIED**.

**IT IS SO ORDERED.**

DATED: 07/05/2005

                                                s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge